**Natalie and Hubert JACKSON,
Individually and on behalf of
Brison Jackson, Plaintiffs,**

v.

**KATY INDEPENDENT SCHOOL DISTRICT, and Danny H. Bryan, Individually and in his Official capacity as former Principal of T.H. McDonald Junior High School, Defendants.**

**Civil Action No. H–95–0280.**

United States District Court,
S.D. Texas,
Houston Division.

June 8, 1996.

Natalie Jackson, Katy, TX, pro se.

Hubert Jackson, Katy, TX, pro se.

Tom M. Davis, Jr., Davis & Shank, Houston, TX, Kelly Frels, Bracewell & Patterson, Houston, TX, for Katy Independent School District and Danny H. Bryan.

## MEMORANDUM AND ORDER

ATLAS, District Judge.

Pending before the Court is Defendants' Motion for Summary Judgment [Doc. # 19]. For the reasons discussed below, Defendants' Motion is granted, and Plaintiff's Complaint is dismissed. The Court cannot and should not become an arbiter of classroom disciplinary disputes absent clear proof of intentional discrimination, which simply has not been shown in this case.

## I. FACTUAL BACKGROUND

Brison Jackson ("Brison") is a bi-racial teenager who was 13 years-old when this lawsuit was filed in December 1994. His mother, Natalie Jackson, is white and his father, Hubert Jackson, is African–American.

In 1993, Brison was a seventh grade student at T.H. McDonald Junior High School ("McDonald") in Katy, Texas. Plaintiffs al-

lege that, from the start of the 1993–94 school year, Brison was treated differently than non-minority students at McDonald, and was denied rights during that school year to which he was entitled under McDonald's code of conduct, discipline policies, and team rules. Plaintiffs allege that, as the year progressed, Plaintiff was subjected to the following discriminatory conduct:

1. Brison was issued conduct slips, lunch detentions, and after school detentions, when non-minority students engaged in the same or similar behavior and received no discipline whatsoever, or discipline less severe than that visited upon Brison;

2. non-minority students were allowed to explain a particular incident or situation to a teacher, while Brison was punished without regard for the underlying circumstances;

3. if Brison tried to explain a situation he was punished further, while non-minority students received no such discipline, or discipline of a lesser degree;

4. Mr. and Mrs. Jackson were never contacted prior to the school's imposing discipline on Brison;

5. a false and/or misleading document was placed in Brison's student file despite knowledge by McDonald that that document was in fact false and/or misleading;[1]

6. conduct slips and detentions were issued to Brison in violation of school policies and team rules;

7. Brison was verbally attacked and humiliated in front of other students by one of his teachers, while non-minority students were not treated in the same manner;

8. Brison was not allowed to change his class schedule or teacher(s), while non-minority students could do so without interference;[2]

9. Brison's school team designation was changed without notification to his parents; and

10. Brison was prevented from continuing to participate in the athletic program at McDonald.

Plaintiffs allege that, as a result of these incidents, Mrs. Jackson contacted Dr. Hugh Hayes ("Hayes"), Superintendent of Katy Independent School District ("KISD"), Aubrey Woods ("Woods"), McDonald's Assistant Principal, and Linda Bailey, a McDonald student counselor, in mid-September 1993, and requested that Brison be allowed to change his schedule (his English class, in particular), as several non-minority students allegedly had done. This request was apparently denied by Woods and McDonald's Principal, Danny Bryan ("Bryan").

In late September 1993, the Jacksons again contacted Woods, stating their belief (among other concerns) that Brison was being discriminated against because he was a bi-racial student, while non-minority children were afforded greater freedom in class and not disciplined as was their son. The Jacksons also notified Hayes, the Texas Education Agency, and the Office for Civil Rights of the alleged continuing problems at McDonald.

On or about October 2, 1993, the Jacksons wrote to the members of the KISD School Board requesting an investigation of discrimination at McDonald. Plaintiffs received no direct response from the Board. In late October 1993, the Jacksons were informed by Hayes that parental concerns should be voiced to the principal at the campus level.

The Jacksons continued updating Bryan, Woods, Hayes, the KISD School Board members, the Texas Education Agency, and the Office for Civil Rights regarding what they perceived as the increased discipline of, and retaliation against their son. As a direct result of their attempts to remedy the situation at McDonald, according to Plaintiffs, Bryan instructed several teachers to monitor Brison. In addition, several teachers named in the Jacksons' letters to the Office of Civil Rights allegedly retaliated against Brison

---

1. Mrs. Jackson stated in her affidavit that Brison's school file contained "a note that discussed death" which school counselors acknowledged did not belong to her son. Plaintiff's Exh. B, at unnumbered page 6.

2. Defendants' summary judgment evidence, however, reveals that Brison was permitted to make this schedule change in October 1993. Defendants' Exh. C (Affidavit of Linda Bailey), ¶ 5.

and his parents by continuing to violate McDonald's code of conduct, discipline rules, and team rules.

Plaintiffs allege that the continuing discrimination, and KISD's failure to prevent its occurrence, caused Brison to suffer emotional distress. Due to his condition, Brison was allegedly forced to miss numerous days of school, absences which (according to Plaintiffs) caused increased anxiety because Brison was constantly being forced to catch up. Moreover, Brison was allegedly ridiculed by teachers when he did attend school and, on one occasion, was sarcastically asked by one of his teachers if he had a "problem."

Brison was allegedly retaliated against throughout the seventh grade school year for his parents' repeated complaints of discrimination. Dissatisfied with a suggestion by the Deputy Superintendent to meet with the principal and teacher(s) in question, Plaintiffs filed this lawsuit in state court on December 22, 1994. Defendants removed the case to federal court on January 30, 1995.

Plaintiffs bring the following claims against KISD and Bryan:

1. discrimination, hostile environment and retaliation claims under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d ("Title VI");

2. race-based discrimination claims under 42 U.S.C. §§ 1981, 1983 and 1985;

3. negligence and gross negligence; and

4. intentional infliction of emotional distress.

## II. *SUMMARY JUDGMENT STANDARD*

In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Bozé v. Branstetter*, 912 F.2d 801, 804 (5th Cir.1990). The facts are to be reviewed with all inferences drawn in favor of the party opposing the motion. *Bozé*, 912 F.2d at 804 (citing *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir.1986)). However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (1995).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial. For any matter on which the non-movant carries the burden of proof at trial, however, the movant may, by merely pointing to the absence of evidence supporting the essential elements of the non-movant's case, shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact so as to warrant a trial. *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir.1995); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994).

The non-movant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Little*, 37 F.3d at 1075. In the absence of any proof, the Court will not assume that the non-movant could or would prove the necessary facts. *McCallum Highlands*, 66 F.3d at 92; *Little*, 37 F.3d at 1075 (citing *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990)). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Little*, 37 F.3d at 1075 (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552).

## III. *DISCUSSION*

Defendants argue that they are entitled to summary judgment because (1) Plain-

tiffs have failed to state a claim under Title VI for discrimination, hostile environment and retaliation or under 42 U.S.C. §§ 1981, 1983 and 1985 for intentional discrimination; (2) Defendants are immune from suit under Section 1983 pursuant to the doctrine of qualified immunity;[3] and (3) Plaintiffs are not entitled to monetary damages or attorneys' fees.

### A. TITLE VI CLAIM

Title VI provides as follows:

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d.

Plaintiffs allege that Title VI was violated because they (both Brison and his parents) were discriminated against on the basis of race,[4] and KISD receives federal financial assistance.

Defendants argue that Plaintiffs have failed to meet the requirements of Title VI because (i) Bryan cannot be sued in his individual capacity under Title VI and (ii) as nonstudents, Mr. and Mrs. Jackson lack standing to sue.

■ To state a claim for damages under Title VI, a plaintiff must allege that (1) the entity involved is engaging in racial discrimination; and (2) the entity involved is receiving federal financial assistance. *Fobbs v.*

*Holy Cross Health System Corp.*, 29 F.3d 1439, 1447 (9th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 936, 130 L.Ed.2d 881 (1995). Because the proper defendant in a Title VI case is an entity rather than an individual, Bryan cannot be sued in his individual capacity under Title VI:[5] therefore, the Title VI claim of all three Plaintiffs is dismissed as to Bryan.

■ Moreover, Mr. and Mrs. Jackson lack standing to assert a claim for damages under Title VI in their own right.[6] A plaintiff must be an intended beneficiary of, an applicant for, or a participant in a federally funded program in order to state a claim under Title VI. *Simpson v. Reynolds Metals Co., Inc.*, 629 F.2d 1226, 1235 (7th Cir. 1980).[7] The intended beneficiaries of a federally funded public school program are school children, not their parents. Therefore, the couple lacks standing to assert a claim for damages against Defendants in their own right. The Jacksons, however, may bring an action under Title VI on behalf of their son Brison, who, as an intended beneficiary of KISD, has standing to assert a claim for discrimination under Title VI. *See* 13 Charles A. Wright *et al.*, *Federal Practice and Procedure* § 3531.9 (2d ed. 1984) (parents may maintain status as representatives of their children and maintain litigation that rests directly on the standing of the children themselves).

■ An implied right of action has been recognized under Title VI if the violations alleged involve intentional discrimination.

---

3. The doctrine of qualified immunity applies to officials sued in their individual capacity. Defendants mistakenly argue that KISD is entitled to qualified immunity.

4. Plaintiffs contend that they were discriminated against because Brison is bi-racial and because his father is African–American. It is not clear from Plaintiff's First Amended Complaint how Defendants allegedly discriminated against Mrs. Jackson.

5. Plaintiffs cite *Fobbs* for the proposition that an individual may be sued under Title VI. This reading of *Fobbs* is incorrect. In *Fobbs*, the plaintiff sued only the defendant entity receiving federal funds. Therefore, although the Court of Appeals reversed in part the district court's dismissal of Fobbs' Title VI claim, this has no bear-

ing on whether individuals may be sued under this statute.

6. Although it is not clear from their First Amended Complaint precisely what relief Mr. and Mrs. Jackson individually seek under Title VI, their response to Defendants' Motion for Summary Judgment suggests that Plaintiffs now seek monetary damages.

7. The Ninth Circuit has rejected third party beneficiary claims under Title VI when the only relief sought is monetary damages. *See Fobbs*, 29 F.3d at 1448. The Fourth Circuit has held that, when injunctive relief is sought under Title VI, parents have standing to seek to enjoin a school board's unconstitutional act. *Taylor v. Cohen*, 405 F.2d 277, 282 (4th Cir.1968).

*Marvin H. v. Austin Indep. Sch. Dist.*, 714 F.2d 1348, 1357 (5th Cir.1983) (citing *Guardians Ass'n v. Civil Serv. Comm'n of City of New York*, 463 U.S. 582, 607 n. 27, 103 S.Ct. 3221, 3235 n. 27, 77 L.Ed.2d 866 (1983)). While Plaintiffs have alleged in conclusory fashion that intentional discrimination exists, they have not met their summary judgment burden of proving discriminatory intent. Plaintiffs' summary judgment evidence consists primarily of their own statements made in letters to Defendants and others reflecting their subjective belief that Brison was discriminated against on the basis of his race. *See, e.g.,* Plaintiffs' Exh. B–1 (Jacksons' letter to Woods dated September 28, 1993), at 8–9 ("We believe this behavior are [sic] obvious acts of racism and, Brison is being singled out due to the fact he is a biracial student"); Plaintiffs' Exh. B–2 (Jacksons' letter to Woods, et al. dated October 2, 1993), at 3 ("The action taken by Mr. Woods on 10/1/93 confirms blatant Racial Discrimination at McDonald Jr. High by Administrators against Brison Jackson"). This is insufficient to defeat a motion for summary judgment in the face of proof that the alleged disparate treatment was motivated by a legitimate, non-discriminatory reason. *See Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 268 (5th Cir.1994); *Little v. Republic Refining Co., Ltd.*, 924 F.2d 93, 96 (5th Cir.1991); *Elliott v. Group Medical & Surgical Serv.*, 714 F.2d 556, 564 (5th Cir.1983), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984).

Brison complained in his deposition of the following disciplinary measures: he was punished for knocking on the wall of the classroom, while an unnamed white student was not punished; he was given conduct slips along with other students for throwing things in class; he was told that he could not switch English classes; he was corrected for misconduct; and he was given a conduct slip for arguing with another student. Defendants' Exh. B (Deposition of Brison Jackson), at 17–18, 26, 18–22, 50–52, and 45–48. The Court's close examination of the entire summary judgment record leads to the conclusion that Plaintiffs have failed to establish a genuine issue of material fact as to KISD's intent to discriminate against Brison on the basis of his or his parents' race.

■ Discriminatory intent may be proven (among other ways) by departures from procedural norms, a history of discrimination against others similarly situated, or by circumstantial evidence, such as a pattern of conduct inexplicable on grounds other than race. *See Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 265–66, 97 S.Ct. 555, 563–64, 50 L.Ed.2d 450 (1977). None of these factors is present in this case.

■ The primary evidence of a deviation from a procedural norm is Bryan's and/or Woods' instruction to Brison's teachers to monitor Brison during the weeks of October 11 and 18, 1993, and to maintain a detailed written log of his activities in the classroom. Plaintiffs complain that this log was placed in Brison's permanent file, despite the fact that disciplinary information was ordinarily not placed in permanent files. Plaintiff's Exh. H (Deposition of Danny Bryan), at 112. In addition, one of the teachers asked to compile a log indicated that monitoring a student's daily activities was not a standard procedure. Plaintiff's Exh. G (Deposition of Jennifer Jennings), at 92.

While the teachers' close monitoring of Brison may have been a departure from a procedural norm, this monitoring is not evidence of discriminatory intent. Indeed, given the Jacksons' strenuous complaints in September and early October to numerous KISD officials, the Defendants' fact finding efforts were appropriate and understandable. Only in this way could KISD determine if there were legitimate reasons for the disciplinary measures visited upon Brison.[8] The

---

8. Plaintiffs have submitted an undated, handwritten note from Bryan to Woods:

> Need to begin to collect data for next Tuesday's meeting with the Jacksons. Progress Report, notes from teachers, comments, etc. We need

to be ready with answers because they are going to come in and ask lots of "why's" & etc. Plaintiffs' Exh. I.
The teachers' logs indicate that Brison was disciplined during these two weeks for misconduct for: (1) "Brison received a conduct slip because

monitoring also could be construed as an effort to make accountable those teachers who had allegedly discriminated against Brison.

Defendants have proffered competent evidence to explain the disciplinary action taken against Brison. Brison's science teacher, Ms. Jennings, stated in an affidavit that teachers at KISD routinely impose discipline for a student's infraction of any of five school-wide rules, including the rules that students must be on time, must bring the appropriate supplies to class, must respect others and must raise their hands during class. Defendants' Exh. C (Affidavit of Jennifer Jennings), at 2. She explains that the types of discipline routinely imposed for tardiness, for disruptive behavior or for any other infraction of the five school-wide rules include the imposition of lunch detentions and after-school detentions. *Id.*[9] Defendants also submitted an excerpt of KISD's *Discipline Management and Student Code of Conduct* for the 1993–94 school year. This Code of Conduct lists examples of behavior violations for which disciplinary action is appropriate, such as students' horseplay or scuffling, tardiness, throwing objects, running in halls, classrooms, and/or cafeteria, and failure to bring books/supplies to class. Defendants' Exh. A(3).

Plaintiffs have failed to rebut Defendants' legitimate, nondiscriminatory reasons for the disciplinary measures taken against Brison. Disruptive behavior like knocking on classroom walls and arguing with other students is routinely disciplined. Defendants' Exh. C (Jennings Affidavit), ¶ 5. Throwing objects

in class is a behavior violation for which discipline is recommended in McDonald's *Student Code of Conduct.* As to Plaintiffs' contention that Brison was not permitted to change English classes, Brison was, in fact, transferred to Ms. Beech's English class on October 28, 1993. Defendants' Exh. C (Affidavit of Linda Bailey), ¶ 5. Therefore, even if (as Plaintiffs allege) Brison initially was told that he could not switch English classes, the claim that he was discriminated against with respect to scheduling is without merit.

Further, there is no evidence in the record to suggest (nor do Plaintiffs allege) a history by Defendants of discrimination against minority students within KISD.[10] Finally, Plaintiffs have not proved a pattern of conduct inexplicable on grounds other than race. Defendants have proffered a legitimate, nondiscriminatory reason for McDonald's disciplinary action against Brison—*i.e.,* his own conduct—which Plaintiffs have failed to rebut. Therefore, Plaintiffs have not satisfied their burden of proving discriminatory intent under Title VI, and summary judgment is granted as to this claim.

## B. *SECTION 1981 CLAIM*

Section 1981 provides as follows:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like

he didn't have the right book"; (2) "Brison turned in his HW & received a late grade because it was due [the previous day]"; (3) "Brison had to [sic] warned about staying quiet & not making fun of others by laughing at them"; (4) "Brison was warned to turn around ... He didn't seem to want to participate in class questions ... he didn't get much done & had to be reminded to keep working"; (5) Brison thumped another student on the ear ... "I returned an 'F' homework assignment to Brison with a note requesting parent signature [because] Brison had done his 'homework' at the beginning of class time"; (6) Brison was confronted about his use of the term "Gringos" in class; (7) "told Brison not to run in hallway as well as another student ... I called him down for running in hall."

Plaintiffs' Exh. B–4 (Daily Logs, Disciplinary Notes to File).

9. Plaintiffs' objections to ¶ 5 of this affidavit and to Defendants' Exhibit A(3) are unfounded. The matters set forth by Ms. Jennings are based on her personal knowledge of school policies and practices. Defendants' Exhibit A(3), only an excerpt, is clearly a business record of the School District. FED.R.EVID. 803(6).

10. In fact, Mrs. Jackson testified that she could recall no incidents of racial discrimination against elementary school children during her two years as a safety instructor with KISD. Defendants' Exh. D (Deposition of Natalie Jackson), at 31, 186.

punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981.

■ Plaintiffs vaguely allege a Section 1981 claim. They, however, do not specify a theory in any of their substantial filings before the Court. The Court can only assume that Plaintiffs rely on the statute's "like punishment" clause. *See Mahone v. Waddle,* 564 F.2d 1018, 1027 (3rd Cir.1977), *cert. denied,* 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978) (Section 1981 provides that all persons shall be subject to the same punishment as white persons are subject ... and that no person shall be subject to any punishment ... other than that to which white persons are subject).[11] Plaintiffs argue that Brison was issued conduct slips, lunch detentions and after school detentions when non-minority students engaged in the same or similar behavior allegedly were not disciplined, or allegedly were disciplined less severely. First Amended Complaint, ¶ 3.05.

To state a claim under Section 1981, Plaintiffs must show (1) discrimination on account of race (2) in connection with an enumerated activity and (3) discriminatory intent. *Firefighters Local Union No. 1784 v. Stotts,* 467 U.S. 561, 583 n. 16, 104 S.Ct. 2576, 2590 n. 16, 81 L.Ed.2d 483 (1984); *Goff. v. Continental Oil,* 678 F.2d 593, 598 (5th Cir.1982). As discussed above, Plaintiffs have failed to establish a requisite element of their case, *i.e.,* discriminatory intent. Moreover, there is little, if any, evidence of disparate treatment between white students and those of other races. *See supra* note 10, and *infra,* at 18. Therefore, summary judgment is granted as to this claim. .

## C. *SECTION 1983 CLAIM*

Section 1983 provides in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, or the District of Columbia, subjects, or causes to be

subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

In order to state a claim under Section 1983, Plaintiffs must allege that (1) they were deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation occurred under color of state law. *Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 120–21, 112 S.Ct. 1061, 1066, 117 L.Ed.2d 261 (1992); *Doe v. Rains County Indep. Sch. Dist.,* 66 F.3d 1402, 1406 (5th Cir.1995).

Plaintiffs allege both a statutory and a constitutional basis for their Section 1983 claim, specifically, that, by discriminating against Brison on the basis of race, Defendants violated Title VI and the equal protection clause of the Fourteenth Amendment.

### 1. *Statutory Basis.*

■ As to Plaintiffs' statutory claim, the Court adopts the Seventh Circuit's reasoning in *Alexander v. Chicago Park Dist.,* 773 F.2d 850 (7th Cir.1985), *cert. denied,* 475 U.S. 1095, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986). In *Alexander,* the Court of Appeals held that, because Title VI provides its own remedial scheme, private actions based on Title VI may not be brought under Section 1983. *Alexander,* 773 F.2d at 856 (quoted in *Lakoski v. James,* 66 F.3d 751, 754 (5th Cir.1995), *petition for cert. filed,* 64 U.S.L.W. 3625 (U.S. Mar. 8, 1996) (No. 95–1439)). *See also Jackson v. City of Atlanta,* 73 F.3d 60, 63 (5th Cir.1996) (finding that Section 1983 is not available when the governing statute—in that case Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*—provides an exclusive remedy for violations of its terms). Therefore, summary judgment is granted as

---

**11.** It is difficult to discern precisely how Section 1981 was violated because Plaintiffs' First Amended Complaint does not articulate any specific theories or facts applicable to the different

statutory claims. Plaintiffs merely recite the facts and assert generally violations of Title VI and Sections 1981, 1983 and 1985.

to Plaintiffs' claim under Section 1983 founded on Title VI.

### 2. *Constitutional Basis.*

The Court concludes that Plaintiffs have failed to meet their summary judgment burden on their Section 1983 claim founded upon an alleged violation of the equal protection clause of the Fourteenth Amendment.

To prove a *prima facie* case of discrimination under the equal protection clause, a plaintiff must show (1) that he is a member of a protected class, (2) that he is otherwise similarly situated to members of the unprotected class, and (3) that he was treated differently from members of the unprotected class. *McNabola v. Chicago Transit Auth.,* 10 F.3d 501, 513 (7th Cir.1993). Plaintiffs must also prove that Defendants acted with discriminatory intent. *Id.*

Summary judgment is appropriate on Plaintiffs' Section 1983 claim on the following grounds:

1. There is no genuine issue of material fact created by the summary judgment record that either Defendant acted with discriminatory intent.
2. Plaintiffs have failed to prove that Brison's constitutional rights were violated through the execution of an official KISD policy.
3. Bryan is shielded from suit by qualified immunity for constitutional claims asserted against him in his individual capacity.

■ *No Racial Motivation.*—Assuming, *arguendo,* that Brison was a member of a protected class who was treated differently from similarly situated white students,[12] Plaintiffs have failed to establish discrimina-

tory intent, as discussed above. Therefore, summary judgment is granted as to Plaintiffs' equal protection claim under Section 1983.

■ *Section 1983 Claim against KISD.*—In order to state a § 1983 claim against an educational institution, or a school official acting in his or her official capacity, a plaintiff must allege that the official acted in accordance with an official governmental policy or firmly entrenched custom that deprived the plaintiff of constitutional rights. *Brown v. Houston Indep. Sch. Dist.,* 763 F.Supp. 905, 908 (S.D.Tex.1991), *aff'd,* 957 F.2d 866 (5th Cir.), *cert. denied,* 506 U.S. 868, 113 S.Ct. 198, 121 L.Ed.2d 140 (1992) (citations omitted). The Fifth Circuit has defined "official policy" as follows:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the district ... or by an official to whom the district has delegated policy-making authority; or
2. A persistent, widespread practice of district officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a claim that fairly represents district policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the district or to an official to whom that body had delegated policy-making authority.

*Eugene v. Alief Indep. Sch. Dist.,* 65 F.3d 1299, 1304 (5th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1680, 134 L.Ed.2d 782 (1996) (citations omitted).

Plaintiffs allege that Defendants "engaged in a continual policy and practice of discrimination against minority students, including

---

12. The Court rejects Defendants' argument that a bi-racial student is not a member of a protected class, insofar as Brison is the son of an African–American male, himself a member of the group which the Fourteenth Amendment was enacted to protect. As to the remaining elements of Plaintiffs' *prima facie* case, the summary judgment record indicates that Brison was treated differently from a similarly situated white student on seemingly just one occasion. *See* Defendants' Reply Brief, at 3–7 (summarizing the allegations of disparate treatment made in Brison's deposition and identifying non-discriminatory reasons

for each incident), and Defendant's Exh. B (Deposition of Brison Jackson), at 17–18 (Brison was punished for knocking on a classroom wall while a white student was not punished for the same conduct). Although his initial request to change English classes was denied, Brison was eventually transferred to Ms. Beech's English class. Therefore, regardless of whether a similarly situated white student was permitted to make this move, Brison was not treated differently (at least as to scheduling) than a member of the unprotected class. *See* Defendants' Exh. C (Bailey Affidavit), ¶ 5.

Brison Jackson." First Amended Complaint, ¶ 4.01(D). However, Plaintiffs have failed to present evidence showing that KISD had such a policy or practice of discrimination. Plaintiff's summary judgment evidence in fact proves the opposite: KISD policies state that discrimination on the basis of race is unlawful in a school environment. *See* Plaintiffs' Exh. A (Deposition of Aubrey Woods), at 26. Nor have Plaintiffs proved that KISD's allegedly disparate treatment of Brison reflected a widespread or persistent practice within the district. In fact, Mrs. Jackson could recall no racial discrimination against an elementary school child during the two years in which she was employed as a safety instructor by KISD. Defendants' Exh. D (Deposition of Natalie Jackson), at 31, 186.

Plaintiffs nevertheless argue that KISD is liable under Section 1983 because Katy's Board of Trustees made a conscious decision to ignore the Jackson's repeated complaints of discrimination, thereby exhibiting deliberate indifference to their "right to be free from discrimination and retaliation." Plaintiffs' Response to Defendants' Motion for Summary Judgment, at 24. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 483, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986) (municipal liability under Section 1983 attaches where a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question); [13] *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 463 (5th Cir.) (Higginbotham, J., concurring), *cert. denied,* 513 U.S. 815, 115 S.Ct. 70, 130 L.Ed.2d 25 (1994) (where a municipality's inaction demonstrates deliberate indifference towards the rights of an individual, the municipality commits an act of omission; its failure to act rises to the level of a conscious or deliberate choice).

Assuming without deciding that liability may be predicated upon this theory, the Court finds that KISD was not deliberately indifferent to the alleged deprivation of Brison's constitutional rights. The Jacksons' letters to the superintendent and the interim superintendent were promptly answered in writing,[14] and, within one day of the superintendent's initial response, the Jacksons had met with a deputy superintendent who, according to Mr. Jackson, "listened to [their] concerns and complaints [and] treated [them] with dignity and respect." Plaintiff's Exh. B–6 (Jacksons' letter to School Board Members dated October 29, 1993), at 2. This belies an inference of deliberate indifference.

Regardless of the responses from the superintendent and the interim superintendent, however, Plaintiffs complain that Katy's Board of Trustees repeatedly ignored their complaints of discrimination. Plaintiffs argue that the Board failed to respond to a letter to Woods dated October 2, 1993, in which "all KISD School Board Members" were copied, and to other letters addressed directly to the Board members dated October 2, and October 29, 1993.

As to the letter to Woods in which Board members were copied, it requested no action of the Board. Having recounted a series of allegedly discriminatory incidents involving Brison, the Jacksons closed by informing Woods that "[u]ntil this situation is rectified by Administrators within the KISD school district, [they] had no alternative but to withdraw Brison from an [abusive] environment." Plaintiff's Exh. B–2. To the extent that any action or response was requested, the Jacksons' request was for action by the "Adminis-

---

**13.** Whether an official has final policy making authority is a question of state law. *Pembaur,* 475 U.S. at 481, 106 S.Ct. at 1299. Under Texas law, final policy-making authority in an independent school district rests with the district's board of trustees. *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir.1993).

**14.** The Jacksons wrote to Dr. Hayes on October 19, 1993, concerning recent disciplinary measures taken against their son. Dr. Hayes responded on October 26, 1993, advising the Jack-

sons that he had asked his deputy superintendent to intervene on his behalf in the matter (which the deputy immediately did) and that the Jacksons should voice their concerns to Mr. Bryan. Plaintiffs' Exh. B–9. On November 7, 1994, the interim superintendent responded to the Jacksons' letter of November 3, 1994, explaining that "[g]oing through a third party [like himself was] not nearly as effective as one or both of [the Jacksons] sitting across from Mr. Tompkins [McDonald's new principal]." Plaintiffs' Exh. B–10.

trators within the KISD school district," which in an earlier paragraph in the Jacksons' letter seemingly denoted KISD administrators at McDonald itself, *i.e.*, the principal and/or vice-principal. Therefore, the Board's failure to respond to this letter (or to intercede with Bryan to extent this was implied) did not constitute deliberate indifference to alleged discrimination against Brison.

The letters addressed directly to the Board members, in contrast, requested action by the Board. In two separate letters dated October 2, 1993, the Jacksons asked the Board members to investigate "an ongoing problem at McDonald" and, in a separate letter, to intercede at the school immediately. The record suggests that no replies were sent to either letter. In addition, Mr. Jackson wrote to the Board members and to the United States Department of Education on October 29, 1993, explaining the Jacksons' decision to file discrimination charges and inviting a "phone call or letter" addressing the situation at McDonald. Plaintiffs' Exh. B–6.

Defendants fail to explain why the Jacksons' letters to the school board went unanswered. However, the Court does not find that the Board's conduct constituted deliberate indifference to Brison's welfare. The Board members were copied and thus were aware of an October 26, 1993 letter that Dr. Hayes wrote to the Jacksons, informing them that "discipline matters are addressed at the campus level," and that they should voice their concerns to Mr. Bryan. Plaintiffs' Exh. B–9. Dr. Hayes' response in this time frame defeats Plaintiffs' deliberate indifference argument. The fact that the Jacksons disagree with the Board's preference for local handling of an obvious school—indeed classroom—level problem does not constitute proof of deliberate indifference. Moreover, to the extent the Jacksons instituted formal charges, the Board's failure to respond is not probative, since the Board was well advised to respond through counsel in the administrative proceeding.

■ *Individual Capacity Claim under Section 1983.*—Qualified immunity shields government officials performing discretionary functions from liability for suits brought against them in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Gibson v. Rich,* 44 F.3d 274, 277 (5th Cir.1995). In examining an official's claim of qualified immunity, courts follow a two-step process. The first step is to ascertain whether the plaintiff alleges "the violation of a clearly established constitutional right." *Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). The second step is to decide whether the defendant's conduct was objectively reasonable in light of the legal rules clearly established at the time of the incident. *Gunaca v. State of Tex.,* 65 F.3d 467, 473–74 (5th Cir.1995); *Salas v. Carpenter,* 980 F.2d 299, 305 (5th Cir. 1992). Even if an official's conduct violated a clearly established constitutional right, he is entitled to qualified immunity if reasonable public officials could differ on the lawfulness of their actions. *Hassan v. Lubbock Indep. Sch. Dist.,* 55 F.3d 1075, 1079 (5th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 532, 133 L.Ed.2d 438 (1995). The Court need not reach this second inquiry, however, if a plaintiff fails to tender the requisite summary judgment evidence establishing that the defendant violated a clearly established constitutional right. *Id.*

Plaintiffs have alleged the violation of a clearly established constitutional right, *i.e.,* the right to be free from disparate treatment based on race. *See Samaad v. City of Dallas,* 940 F.2d 925, 932 (5th Cir.1991) (if a governmental actor has imposed unequal burdens based on race, it has violated the equal protection clause). However, because Plaintiffs have failed to rebut Defendants' legitimate, non-discriminatory reason for their disparate treatment of Brison, *i.e.,* failed to establish a genuine fact question as to Defendants' discriminatory intent, there has been shown to be no constitutional violation. Therefore, the Court need not reach

the second inquiry, the objective reasonableness of Bryan's conduct.[15]

## D. *SECTION 1985 CLAIM*

Section 1985 provides a cause of action for persons injured by conspiracies to interfere with their civil rights. 42 U.S.C. § 1985(3). In order to state a claim under Section 1985(3), a plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *United Bhd. of Carpenters and Joiners of Am., Local 610, AFL–CIO v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 3356–57, 77 L.Ed.2d 1049 (1983). The conspiracy not only must have as its purpose the deprivation of "equal protection of the laws, or of equal privileges and immunities under the laws," but must also be motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* "This narrow intent requirement erects a significant hurdle for section 1985(3) plaintiffs." *Burrell v. Board of Trustees of Ga. Military College,* 970 F.2d 785, 794 (11th Cir.1992), *cert. denied,* 507 U.S. 1018, 113 S.Ct. 1814, 123 L.Ed.2d 445 (1993).

 Plaintiffs allege that "Defendants conspired to deprive Plaintiffs of equal protection under the Fourteenth Amendment of the United States Constitution and to intentionally discriminate against Plaintiffs because of their race, because they associate with minorities, and/or because they have opposed discriminatory practices." Plaintiffs' First Amended Complaint, ¶ 4(G). Plaintiffs merely point to Mr. Jackson's statement that he and his wife wrote to Dr. Hayes on October 19, 1993 "because it appeared that Mr. Bryan and Mr. Woods had become a part of a conspiracy against Brison." Plaintiffs' Exh. E, at third unnumbered page. This is clearly insufficient to withstand a motion for summary judgment. The record does not establish that Defendants discriminated against Brison on the basis of race. Thus, Plaintiffs cannot state a conspiracy claim under Section 1985. *See Great Am. Fed. Sav. & Loan Ass'n v. Novotny,* 442 U.S. 366, 372, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957 (1979). Therefore, summary judgment is granted as to Plaintiffs' cause of action under Section 1985.

## E. *STATE LAW CLAIMS*

### 1. *Intentional Infliction of Emotional Distress.*

In order to recover damages for intentional infliction of emotional distress, a plaintiff must prove that (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *MacArthur v. University of Tex. Health Ctr.,* 45 F.3d 890, 898 (5th Cir.1995); *Danawala v. Houston Lighting & Power Co.,* 14 F.3d 251, 256 (5th Cir.1993); *Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex.1993). Conduct is outrageous only if it surpasses "all possible bounds of decency" such that it is "atrocious and utterly intolerable in a civilized community." *Twyman,* 855 S.W.2d at 621.

 Plaintiffs allege that Bryan acted intentionally and/or recklessly in targeting Brison to be monitored by his teachers, in refusing to take appropriate remedial action to prevent the discrimination that Brison was forced to suffer, in applying the policies and procedures of KISD and McDonald to Brison and his parents in a discriminatory manner, and in knowingly placing or causing to be placed in Brison's student file false and misleading information. Plaintiffs contend that

---

**15.** The Court notes in passing, however, that it would conclude that Bryan's conduct was objectively reasonable in light of the matters known to him at the time. This qualified immunity analysis also is applicable to Plaintiffs' Section 1981 claims. *See Wicks v. Mississippi State Employ-* *ment Servs.* 41 F.3d 991, 996 n. 21 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2555, 132 L.Ed.2d 809 (1995) (racial discrimination claims under Section 1981 are subject to the defense of qualified immunity).

this conduct was extreme and outrageous and that it caused both Brison and his parents severe emotional distress. Plaintiffs' First Amended Complaint, ¶ 4.04.

The Court holds that Plaintiffs have failed to establish a *prima facie* case of intentional infliction of emotional distress. Bryan's directive to Brison's teachers to monitor Brison's classroom activities and the teachers' conduct generally are neither extreme nor outrageous. For instance, the monitoring, a fact gathering tool that all could use for accountability, was a legitimate method to prepare for an upcoming meeting with the Jacksons. Even absent this benign motivation, the Court does not find it atrocious or intolerable conduct that a principal would monitor a student's activities over the course of one or two school weeks when there is an issue about the student's behavior and the teachers' reactions to it.

Finally, there is no evidence in the record that the emotional distress allegedly suffered by Plaintiffs was severe as defined in applicable case law.[16] *See, e.g., Behringer v. Behringer,* 884 S.W.2d 839, 844 (Tex.App.—Forth Worth 1994, writ denied); *Tidelands Auto Club v. Walters,* 699 S.W.2d 939, 941 (Tex.App.—Beaumont 1985, writ ref'd n.r.e.). Therefore, summary judgment is granted as to Plaintiffs' claim for intentional infliction of emotional distress.

### 2. *Gross Negligence/Negligence Claim.*

■ Plaintiffs allege that Defendants were negligent in one or more of (but not limited to) the following ways: (1) failing properly to instruct and train KISD employees, agents and representatives regarding the handling of discrimination complaints; (2) failing to establish and implement a comprehensive and effective racial harassment policy; (3) failing properly to monitor the work, conduct and performance of KISD employees, agents and representatives; (4) failing to provide students an educational environment free of race discrimination; (5) failing to remove, eliminate, or abate discriminatory conditions; (6) failing to provide

and take adequate remedial measures with respect to discrimination complaints; (7) failing to conduct a reasonable investigation of the discriminatory incidents alleged by Plaintiffs; and (8) failing to follow and/or implement policies and procedures or rules and regulations to prevent and remedy race discrimination. Plaintiffs' First Amended Complaint, at ¶ 4.03.

The Court finds that as a matter of law Plaintiffs have failed to state a claim for gross negligence. There is no evidence in the record that Defendants had an actual awareness of the extreme risk created by their conduct or that the conduct alleged involved an extreme degree of risk of harm at all. *See Durham Transp., Inc. v. Valero,* 897 S.W.2d 404, 411 (Tex.App.—Corpus Christi 1995, writ denied).

■ As to Plaintiffs' ordinary negligence claims, KISD is protected from suit by the doctrine of sovereign or governmental immunity. *See Cox v. Galena Park Indep. Sch. Dist.,* 895 S.W.2d 745, 748 (Tex.App.—Corpus Christi 1994) (citations omitted) (the law is well settled that an independent school district is an agency of the state and, while exercising governmental functions, is not answerable for its negligence in a suit sounding in tort). Therefore, summary judgment is granted as to Plaintiffs' negligence claims against KISD.

■ As to Plaintiffs' negligence claims against Bryan, Defendants asserts that Bryan is shielded from suit by official immunity. Government employees are entitled to official immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority. *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994). It is clear that, at all times relevant to this lawsuit, Bryan was performing discretionary duties and acting within the scope of his authority as an junior high school principal. *Id.* at 654. Plaintiffs contest, however, that Bryan was acting in good faith, *i.e.,* that his conduct was objectively

16. Brison simply stated in his affidavit that, as the school year went by, he "got real upset because [he] didn't understand why the teachers were treating [him] so bad" and that he "had to go to the doctor because [he] felt so bad." Plaintiff's Exh. D, at unnumbered page 3.

reasonable. *See, id.* at 656 (adopting an "objective legal reasonableness" test for the element of good faith in official immunity cases and clarifying the necessary proof required for summary judgment). Viewing the disputed facts in the light most favorable to Plaintiffs, the Court finds that a reasonably prudent school official might have believed that Bryan's conduct personally and supervising the teachers acting in response to Brison's behavior was lawful. *Id.*

## IV. CONCLUSION

For the reasons discussed above, summary judgment is GRANTED as to all causes of action. Therefore this case is DISMISSED with prejudice.