**MOUNT SINAI UNION FREE SCHOOL DISTRICT, et al., Plaintiffs,**

v.

**BOARD OF EDUCATION PORT JEF-FERSON PUBLIC SCHOOLS, et al., Defendants.**

No. CV 92–0754.

United States District Court, E.D. New York.

Oct. 22, 1993.

Curt Rogg–Meltzer by Scott J. Steiner, New York City, for plaintiffs.

Gunnigle, Johnson, P.C. by William M. Johnson, Port Jefferson, NY, for defendants Bd. of Educ. of Port Jefferson UFSC and Philip J. Magnarella, In His Official Capacity as Superintendent.

Block, Amelkin & Hamburger by Frederic Block, Smithtown, NY, for defendant Philip Magnarella Personally.

Office of James R. Sandner, Gen. Counsel by Katherine A. Levine, New York City, for defendant Teachers.

## AMENDED MEMORANDUM AND ORDER

WEXLER, District Judge.

In 1985, continuing a long-standing arrangement, the Mount Sinai Union Free School District ("Mt. Sinai") and the Port Jefferson Union Free School District ("Port Jefferson") entered into a contract whereby Mt. Sinai sent its high school students to Port Jefferson for education. In late 1988, because of a souring of relationships between the two school districts and an increase in Mt. Sinai high school age students, Mt. Sinai voters approved the construction of a home high school. In 1989, the legislature of the State of New York enacted § 3014–c of the New York Education Law. This statute essentially requires that when a sending district like Mt. Sinai assumes responsibility for the education of its own students, it must consider teachers in a receiving district like Port Jefferson, who were responsible for teaching those students, employees of the sending district. Moreover, in the event the sending district does not require the services of all the teachers from the receiving district, the sending district must place those excessed teachers on a preferred eligibility list.

Mt. Sinai, its School Board, certain Mt. Sinai parents, students, taxpayers and teachers, all understandably upset that Mt. Sinai will be required to hire Port Jefferson teachers, brought the above-referenced action alleging a multitude of federal and state constitutional violations. Besides the Port Jefferson Union Free School District, plaintiffs name as defendants its School Board; Philip J. Magnarella ("Magnarella"), Port Jefferson's Superintendent of Schools in both his official and individual capacities; and certain Port Jefferson teachers who instituted an Article 78 proceeding against Port Jefferson and Mt. Sinai to enforce § 3014–c.

Presently before the Court are motions to dismiss by the teacher defendants pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure or in the alternative to abstain from hearing this case. Additionally, plaintiffs move for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the ground that § 3014–c violates the Contract Clause and Due Process and Equal Protection Clauses of the Federal and State Constitutions. Finally, both the Port Jefferson School Board and Magnarella move for summary judgment with respect to the claims brought against them pursuant to 42 U.S.C. § 1983.

For the reasons stated below, this Court rejects the defendant teachers' arguments that abstention is called for in this case. However, this Court does find merit with their arguments that the teacher, student/parent, and taxpayer plaintiffs lack standing to bring this lawsuit. Accordingly, all claims brought by these plaintiffs are dismissed. This Court also finds that all remaining federal constitutional claims, except the Contract Clause claim, brought by Mt. Sinai and its School Board (the only remaining plaintiffs) are so insubstantial as to merit dismissal. However, although the Contract Clause claim does not merit dismissal pursuant to Rule 12(b)(1), this Court grants summary judgment in favor of defendants with respect to this claim. Further, both Magnarella's and the Port Jefferson's School Board's motion for summary judgment with respect to the claims brought pursuant to 42 U.S.C. § 1983 is granted. Finally, because there are no remaining federal claims, this Court will not exercise supplemental jurisdiction over any of the remaining state claims. Therefore, those claims are dismissed as well.

## I. BACKGROUND

This case arises out of a dispute between Mt. Sinai and Port Jefferson. Because Mt. Sinai had few high school age students, it contracted with Port Jefferson to send its high school age students to Port Jefferson for education, rather than maintain a home high school. New York Education Law § 2040 permitted the parties to reach by private agreement, a series of written contracts, which set out the rights and obligations of the respective school districts with reference to this arrangement. Indeed, Mt. Sinai sent its high school age students to Port Jefferson for education for over fifty years.

On or about January 22, 1985, Mt. Sinai and Port Jefferson entered into a six year "tuition contract," by which Mt. Sinai agreed to continue to send all their 10th, 11th and 12th grade school children to Port Jefferson. Mt. Sinai was to pay Port Jefferson increasing tuition rates, beginning for the 1985–86 school year, $4,362.00 per student, up to $4,991.00 per student for the 1990–91 school year.

Subsequently, on or about June 26, 1987, the New York State Commissioner of Education voided the sixth year (1990–91) of the tuition contract, determining in an administrative proceeding that § 2040 only permits private parties to enter tuition contracts lasting up to five years. Throughout the life of the contract, Mt. Sinai's high school age population was growing, while Port Jefferson's high school age population was shrinking. Thus, by the 1983–84 school year, over one half of the high school students attending the Port Jefferson High School were from Mt. Sinai.

Plaintiffs allege that despite the fact that Mt. Sinai students represented more than one half of Port Jefferson's high school population, the Port Jefferson School Board and Magnarella refused any input from Mt. Sinai or its School Board with respect to decisions affecting the education of Mt. Sinai students. Additionally, plaintiffs claim that Mt. Sinai students were discriminated against as a group in the Port Jefferson school system. Plaintiffs further allege that the Port Jefferson School Board and Magnarella were made aware of this discrimination yet refused to investigate or correct the situation.

During this time period, the New York State Department of Education and other agencies recommended that merger of the two school districts might present the best solution to the controversy that was developing between the two districts. Plaintiffs allege that while they supported such a course of action, Port Jefferson rejected the proposed merger. Partially as a result of Port Jefferson's refusal of the merger proposal, Mt. Sinai announced that it would pursue the option of building its own high school so that it could terminate its relationship with Port Jefferson.

On or about December 13, 1988, the residents of Mt. Sinai approved the construction of the new high school. Sometime in 1989, construction contracts went forward and Mt. Sinai projected that the high school would be completed in time for the 1992–93 school year. Thus, Mt. Sinai still needed to make some provision for the continuing education of its high school students for the two school years 1990–91 and 1991–92, years which were not encompassed by either the 1985 tuition contract with Port Jefferson, or the anticipated completion date of its own high school.

On or about January of 1989, the Mt. Sinai School Board and the Port Jefferson School Board, in part through its superintendent, reached an agreement in principle as to a new tuition contract to cover the two school years. However, plaintiffs allege that despite repeated demands that the final revised version of the contract be delivered for execution, the contract was never delivered or reduced to writing. One of the terms agreed to in principle was that Mt. Sinai would offer up to fifteen teaching slots to teachers from the Port Jefferson school district, as long as Mt. Sinai could hire the individuals it thought were best qualified for the positions.

While Mt. Sinai was waiting to receive the contract, Port Jefferson School Board and its superintendent and the New York State United Teachers, initiated and guided legislation, which eventually became Education Law § 3014–c.[1] This legislation essentially protects the tenure and other rights of teachers in situations where a school district "takes back" its tuition students, from what was deemed to be the "receiving district." The statute provides that where the "sending district" assumes the education of students formerly provided by a receiving district,

> each teacher employed in the education of such students by such receiving district at the time of such take back by the sending district shall be considered an employee of such sending district, with the same tenure

---

1. As it turns out, the two parties were never able to agree on or execute a tuition contract for the 1990–91 and 1991–92 school years. Consequent-ly, by operation of state law, tuition charges were determined and imposed by way of a "commissioner's formula."

status he maintained in the receiving district.

N.Y.Educ.Law § 3014–c(2) (McKinney & Supp.1993).

The statute further provides that

[i]f the number of teaching positions needed to provide the educational services required by such sending district is less than the number of teachers eligible to be considered employees of such sending district ... the services of the teachers having the least seniority in the receiving district whose students are taken back ... shall be discontinued. Such teachers shall be placed on a preferred eligible list of candidates for appointment to a vacancy that may thereafter occur ... in the sending district and the receiving district....

N.Y.Educ.Law § 3014–c(3) (McKinney & Supp.1993).

When a sending district assumes the education of its children, the receiving district must generate a list of those teachers who are excessed as a result of the take back. Plaintiffs allege that the Port Jefferson School Board and its superintendent delayed generating the required list and when it finally did so, intentionally inflated the number of teachers who were excessed as a result of the take back. Inconsistently, plaintiffs also allege that Port Jefferson never generated a formal excess list. This litigation was instituted after certain Port Jefferson teachers brought an Article 78 proceeding in New York Supreme Court seeking to enforce § 3014–c.

## II. *DISCUSSION*

1. *Abstention*

■ Defendants argue that this Court should abstain from hearing this case under both the *Burford* and *Younger* abstention doctrines. *Burford* abstention is appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar.... It is enough that exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a

coherent policy with respect to matters of public concern.

*Colorado Conservation Dist. v. United States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 1244–45, 47 L.Ed.2d 483 (1976).

In *Burford v. Sun Oil Co.,* 319 U.S. 315, 334, 63 S.Ct. 1098, 1107, 87 L.Ed. 1424 (1943), the Supreme Court held that a suit seeking review of the reasonableness under Texas state law of a state commission's permit to drill oil wells should have been dismissed by the district court. The Supreme Court found that the reasonableness of the permit was not of transcendent importance and the Court was concerned that constant federal court interference would disrupt the elaborate review system Texas had developed for dealing with the complexities of oil and gas fields.

Here, plaintiffs are bringing a facial challenge to an unambiguous state tenure statute. *See Hawaii Hous. Auth. v. Midkiff,* 467 U.S. 229, 236, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984) (abstention inappropriate where plaintiffs bring facial challenge to state statute that admits of only one construction). Moreover, they are not asking this Court to involve itself in the petty details of a complex state scheme. *See Wendell Terrace Apartments v. Scruggs–Leftwich,* 588 F.Supp. 839, 843 (E.D.N.Y.1984) (abstention inappropriate where federal court is not interfering "in the petty details or the administration of a state policy"). Rather, plaintiffs are merely asking this Court to resolve, one way or the other, the validity of one aspect of New York's tenure scheme. Thus, federal court review of the constitutionality of § 3014–c will not disrupt New York's ability to establish a coherent tenure policy. Accordingly, this Court finds that *Burford* abstention is inappropriate under circumstances such as these.

■ Although a closer question, this Court also finds that *Younger* abstention is inappropriate in this case. *Younger* stands for the proposition that federal courts may not enjoin pending state court criminal or civil proceedings. *See Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (criminal proceedings); *Huffman v. Pursue*

*Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (civil proceedings). In *CECOS Int'l Inc. v. Jorling,* 895 F.2d 66, 70 (2d Cir.1990), the Second Circuit specified three questions which must be answered affirmatively in order to justify a *Younger* abstention. First, is there an ongoing state proceeding; second, does that state proceeding implicate important state interests; and third, does the plaintiff have an adequate opportunity to raise the constitutional challenges in the state proceeding.

■ Although this Court finds that the first two questions must be answered in the affirmative, there is doubt as to whether the Article 78 proceeding brought by the Port Jefferson teacher defendants against the Mt. Sinai School Board and the Port Jefferson School Board is the proper vehicle to bring a facial challenge of § 3014–c. This is especially so, considering that the instant litigation involves additional plaintiffs and defendants not joined in the earlier Article 78 proceeding. *See Cecos,* 895 F.2d at 71 (where all the necessary parties are not present, Article 78 proceeding is improper forum for bringing facial challenges to state statutes). This Court notes, however, that the claims brought by the additional parties, clearly lack merit. However, because "abstention from the exercise of federal jurisdiction is the narrow exception, not the rule" this Court will entertain jurisdiction over this case. *See Cecos,* 895 F.2d at 70.

## 2. *Standing*

Defendants next argue that this Court should dismiss all claims brought by the teacher plaintiffs, parent/student plaintiffs and taxpayer plaintiffs for lack of standing.[2] For the reasons stated below, this Court finds merit with defendants' position.

■ At its most basic level, standing asks " 'whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf.' " *Simon v. Eastern Kentucky Welfare*

*Org.,* 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976) (quoting *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) (emphasis in original). In order to meet the constitutional test for standing, the plaintiff must show that he or she has sustained or is in immediate danger of sustaining some direct, distinct and palpable injury as a result of the illegal conduct. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). Moreover, for future injury to confer standing, its threat must be "real and immediate" not "conjectural or hypothetical." *City of Los Angelos v. Lyons,* 461 U.S. 95, 101–02, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983). The plaintiff must then show that there is a "fairly traceable" causal connection between the claimed injury and the challenged conduct, and that the injury " 'is likely to be redressed by a favorable decision.' " · *Valley Forge Christian College,* 454 U.S. at 472, 102 S.Ct. at 758 (quoting *Simon,* 426 U.S. at 41, 96 S.Ct. at 1925).

· ■ In addition to the constitutional requirements for standing, courts have developed certain prudential considerations that must be met before standing can be conferred. First, the plaintiff must assert his or her own legal interests, rather than the legal rights or interests of third parties. *Warth,* 422 U.S. at 499, 95 S.Ct. at 2205. Second, courts refrain from exercising jurisdiction over "abstract questions of wide public significance" which amount merely to "generalized grievances" pervasively shared by the populace which would best be addressed in the representative branches. *Id.* Third, the plaintiff should demonstrate a connection between the injury he alleges and some source of law which arguably justifies a lawsuit. *Flast v. Cohen,* 392 U.S. 83, 102, 88 S.Ct. 1942, 1953, 20. L.Ed.2d 947 (1968).

## A. *Teacher Standing*

■ John Masterjohn ("Masterjohn") and Iris Schiff ("Schiff") are the only two teacher plaintiffs in this lawsuit. Although both of them are tenured teachers in the Mt. Sinai

**2.** Defendants do not, nor could they, challenge the Mt. Sinai School District's or its School Board's ("district plaintiffs" or Mt. Sinai") standing to bring this lawsuit.

school district, they are tenured in the K–6 tenure area, not the grades 7–12 tenure area. Accordingly, under New York law, whatever seniority they have accrued is in the K–6 tenure area. Neither Masterjohn nor Schiff argue that their seniority in their tenure area has been diminished as a result of § 3014–c. Rather, Masterjohn argues that he withdrew his application to teach in the new Mt. Sinai high school because he was wary of being excessed from that position in the event Port Jefferson teachers with greater seniority were required to be hired. Schiff, who has the lowest level of seniority in her tenure area and is not even certified to teach in the 7–12 tenure area, argues that if Masterjohn had taken a high school position, her chances of being excessed in the K–6 area would have decreased.

Because neither teacher was working or accruing seniority in the 7–12 tenure area before the implementation of § 3014–c, they cannot complain of any injury resulting from its implementation. They have lost no seniority as a result of § 3014–c and therefore have suffered no cognizable injury. The mere fact that Masterjohn desires to teach in the newly established high school and is upset that certain Port Jefferson teachers may have greater seniority than he, does not give him standing to challenge § 3014–c.[3] Although Mt. Sinai now claims that it would have appointed Masterjohn to a high school teaching position, nothing required that it do so. It could have unilaterally decided to keep Masterjohn in his K–6 position. Thus, "the links in the chain of causation between the challenged ... conduct and the asserted injury are far too weak for the chain as a whole to sustain [Masterjohn's] standing." *Allen v. Wright,* 468 U.S. 737, 759, 104 S.Ct. 3315, 3328, 82 L.Ed.2d 556 (1984). Likewise, Schiff's wholly attenuated claim of injury is totally insufficient to confer standing upon

her to bring this lawsuit. Accordingly, all claims brought by these two teacher plaintiffs are dismissed for lack of standing.

### B. *Parent/Student Standing*

■ The parent and student plaintiffs challenge § 3014–c on the grounds that it infringes on the students' rights of association and their rights to have their local school board make educational decisions in the students' best interests. Their claims do not give this Court any pause. These plaintiffs point to no relevant authority supporting their position that students or their parents have the constitutionally protected right to be taught by teachers of their choice. Additionally, there is no federal constitutional right to have local school boards make educational decisions. Moreover, these plaintiffs do not even allege that the students' education has actually suffered as a result of § 3014–c. They merely speculate that the Port Jefferson teachers may be inferior to those that Mt. Sinai would otherwise hire. There is no indication that any of the students are now being taught by an inferior Port Jefferson teacher. Indeed, some of the plaintiff students are not yet high school students. Under circumstances such as these, this Court finds that neither the parents nor the students have standing to bring this lawsuit. Accordingly, all claims brought by these plaintiffs are dismissed.

### C. *Taxpayer Standing*

■ It is axiomatic that tax payers do not ordinarily have standing to challenge laws of general application where their own injury is not distinct from that suffered by other taxpayers and citizens. *ASARCO Inc. v. Kadish,* 490 U.S. 605, 613–14, 109 S.Ct. 2037, 2043, 104 L.Ed.2d 696 (1989). Here, the taxpayer plaintiffs argue that § 3014–c will operate to shift tax burdens from Port

---

3. Under New York law, if Masterjohn had applied and accepted a position as a Mt. Sinai high school teacher, he would have been given a new probationary appointment in and placed on the bottom of the seniority list of the grades 7–12 tenure area regardless of § 3014–c. *See* N.Y.Education Law § 2510 and 8 NYCCR § 30.1 *et seq.* Those Mt. Sinai teachers tenured in grades 7–12, who had been teaching grades 7–9 in Mt. Sinai, would have more seniority than Masterjohn.

Thus, even absent § 3014–c, Masterjohn would lose the seniority he accrued as a teacher in the K–6 tenure area. The Court does recognize that if § 3014–c was not enacted, and Port Jefferson teachers were not required to be hired, Masterjohn's chances of being excessed would be reduced. However, because Masterjohn does not have any constitutionally protected right to appointment as a high school teacher at any seniority level, this fact does not change the analysis.

Jefferson to Mt. Sinai. Essentially, these plaintiffs claim that if Mt. Sinai is forced to hire Port Jefferson teachers with seniority status, it will have to pay these teachers at a higher salary and benefit level than it would have had to otherwise pay teachers, if it were free to hire teachers of its own choosing. This, according to plaintiffs, will at some later date translate into higher taxes for Mt. Sinai residents. Conceding that federal authority militates against standing in this instance, the taxpayer plaintiffs argue that New York State law confers on them the ability to bring this action.

Article 7–A of the State Finance Law of the State of New York recognizes the right of individual citizen-taxpayers to bring a declaratory judgment action to remedy an unconstitutional disbursement or misapplication of state funds. Here, however, there is no claim that *state* funds are being wrongly disbursed. Rather, the claim is that *local* funds may, sometime in the future, be disbursed. Additionally, § 3014–c is a regulatory statute that only incidentally may involve the spending of local funds. It does not directly authorize spending. Finally, even if this state law does confer standing, because of the state interests involved, state court is the proper venue to bring such an action. Accordingly, all claims brought by taxpayer plaintiffs are dismissed for lack of standing.

### 3. The Mt. Sinai Plaintiffs' Claims

The Mt. Sinai district plaintiffs, the only remaining plaintiffs in this lawsuit, challenge § 3014–c under a variety of constitutional theories. Now before the Court is their motion for partial summary judgment in favor of a finding from this Court that § 3014–c violates the Contract Clause and the Due Process and Equal Protection clauses of the Constitution. The only colorable claim Mt. Sinai has, however, is one for violation of the Contract Clause. The Mt. Sinai plaintiffs have not presented this Court with any rational argument supporting their contention that § 3014–c somehow violated their, as a local School District and School Board, Due Process or Equal Protection rights. Consequently, their motion with respect to these claims is denied and the federal Due Process and Equal Protection claims are dismissed pursuant to Rule 12(b)(1) for presenting insubstantial constitutional claims. This Court will now turn to the only remaining claim at issue.

Mt. Sinai argues that the implementation of § 3014–c violates the Contract Clause of the United States Constitution. When Mt. Sinai entered into the tuition contract with Port Jefferson, no term of the contract required it to hire excessed Port Jefferson teachers in the event Mt. Sinai took back its students. After the passage of § 3014–c, however, such a requirement was mandated. Thus, Mt. Sinai argues that § 3014–c changed the terms of their contract and added retroactive costly terms to the contract.

■■■ Article 1, § 10 of the Constitution provides: "No state shall … pass any … Law impairing the Obligation of Contracts." Although the language of the Contract Clause offers absolute protection on its face, the Supreme Court has articulated a three part balancing test to help courts decide whether the Contract Clause has been violated. This Court must thus determine: (1) whether the challenged statute substantially impairs a contractual relationship; (2) the public purpose justifying the impairment; and (3) the reasonableness of the means chosen. *Energy Resources Group Inc. v. Kansas Power and Light Co.*, 459 U.S. 400, 411, 103 S.Ct. 697, 704, 74 L.Ed.2d 569 (1983). When employing this test, courts may also give greater deference to a legislative enactment when the state itself does not benefit financially from its operation, *United States Trust Co. v. New Jersey*, 431 U.S. 1, 22, 97 S.Ct. 1505, 1517, 52 L.Ed.2d 92 (1977), and may also consider "whether the industry the complaining party has entered has been regulated in the past." *Energy Resources Group*, 459 U.S. at 411, 103 S.Ct. at 704.

■■■ Initially, this Court must determine whether § 3014–c even implicates the Contract Clause inasmuch as the contract between Mt. Sinai and Port Jefferson contained no terms governing Mt. Sinai's obligation to Port Jefferson teachers in the event Mt. Sinai assumed the education of its own students. In *General Motors Group v. Romein*, — U.S. ——, ——, 112 S.Ct. 1105, 1111, 117

L.Ed.2d 328 (1992), the Supreme Court held that a state workers' compensation statute did not implicate the Contract Clause because the employment contracts entered into by General Motors and its employees were silent with respect to workers' compensation. Consequently, the Court found that the "statute did not change the legal enforceability of the employment contracts here. The parties still have the same ability to enforce the bargained-for terms of the employment contracts that they did before the ... statute was enacted." *Id.*

Similarly, § 3014–c does not affect the legal enforceability of any of the bargained-for terms of the tuition contract between Port Jefferson and Mt. Sinai. Mt. Sinai alleges that the two school districts reached an agreement in principle that Mt. Sinai would hire only up to fifteen Port Jefferson teachers of its own choosing in the event Mt. Sinai took back its students. This term, however, did not find its way into the final agreement between the parties. Had the final contract actually contained such a bargained-for term, Mt. Sinai's argument that § 3014–c implicated the Contract Clause would have substantially more force. Thus, although the enactment of § 3014–c does place an additional burden on Mt. Sinai, just as the enactment of the workers' compensation statute placed an additional burden on General Motors, a state may, when exercising its police powers, choose where to place those burdens without violating the Contract Clause.

Moreover, even if this Court were to find that the Contract Clause is implicated by the enactment of § 3014–c, the statute would still pass constitutional muster. Although this Court would indeed find that § 3014–c substantially impaired the tuition contract, it would also find that the state had a legitimate interest in enacting the statute and that the means chosen to promote the state interest were reasonable under the circumstances.

For over fifty years, Mt. Sinai sent its high school age students to Port Jefferson for education. As a result, Port Jefferson hired teachers who accrued both tenure and seniority rights in the Port Jefferson system. The state has a legitimate interest in protecting the job security of these individual teachers who have spent at least a part of their careers educating Mt. Sinai students. Furthermore, this transferring of tenure and seniority rights is not new to New York education law. As early as 1972, New York State enacted analogous legislation to protect teachers working for school districts that are later taken over by boards of cooperative educational services. *See* N.Y.Educ.Law § 3014–a. Moreover, New York state also chooses to protect teachers who have accrued tenure and seniority rights in a sending district. In other words, if a teacher works in a school district that later contracts to send its students to another school district for education, the receiving school district has to grant those teachers excessed from the sending district as a result of the contract the same tenure and seniority rights that they enjoyed in the sending district. *See* N.Y.Educ.Law § 3014–d.

Because New York has a legitimate interest in developing a uniform and fair tenure and seniority system, and because § 3014–c is the logical analogue to New York's other protective legislation in this area, this Court would decline to find that the enactment of § 3014–c violates the Contract Clause. Moreover, the constitutionality of § 3014–c becomes even more apparent when one considers the breadth of legislation in this area and the fact that this new legislation was clearly patterned after pre-existing legislation, albeit in a slightly different context. Finally, but certainly not insignificantly, this Court would give due deference to New York State's legislative policy choice, especially where, as here, the state itself does not financially benefit from its decision. Accordingly, Mt. Sinai's motion for partial summary judgment is denied and its claim that § 3014–c violates the Contract Clause is dismissed.

4. *Magnarella's and the Port Jefferson School Board's Motion for Summary Judgment with Respect to all Claims Brought Pursuant to 42 U.S.C. § 1983*

Because this Court has already determined that the teacher, parent/student, and taxpayer plaintiffs lack standing, their claims against these defendants pursuant to 42

U.S.C. § 1983 are dismissed. Moreover, because this Court has also determined that the constitutional claims brought by the only remaining plaintiffs also lack merit, their civil rights claims are also dismissed.

### III. CONCLUSION

For the above-stated reasons, all the federal claims brought against defendants are dismissed. Additionally, because all the federal claims are dismissed, this Court declines to entertain supplemental jurisdiction over the remaining state claims and dismisses those claims as well.

SO ORDERED.