Naomi **RYANS** et vir., Charles Ryans, Plaintiff,

v.

Charlene **GRESHAM**, et al., Defendants.

No. 9:97 CV 225(TH).

United States District Court,
E.D. Texas,
Lufkin Division.

April 10, 1998.

Carnegie H. Mims, Jr., Houston, TX, for Plaintiff.

John C. Hardy, III, Tyler, TX, William S. Helfand, Houston, TX, for Defendants.

### MEMORANDUM OPINION

HEARTFIELD, District Judge.

Plaintiffs, Naomi and Charles Ryans, sue defendants, Charlene Gresham, Sidney Green, Byron Lyons, the City of Livingston, Texas (Livingston), and the Livingston, Texas, Independent School District (LISD) for false imprisonment and for violating their rights under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1981 (Section 1981). They seek damages and equitable relief. Gresham, Green, Lyons, Livingston and LISD move for summary judgment. The Ryans move for leave to file an amended complaint. The court grants summary judgment and denies the request for leave to file an amended complaint.

## SUMMARY JUDGMENT

Summary judgment occurs when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When the nonmoving party bears the burden of proof on an issue at trial, it must adduce evidence sufficient for a reasonable jury to return a verdict in its favor to overcome a properly supported motion for summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–27, 106 S.Ct. 2548, 2552–55, 91 L.Ed.2d 265, 273–76 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–53, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202, 211–15 (1986); *Hassan v. Lubbock Indep. Sch. Dist.*, 55 F.3d 1075, 1079 (5th Cir.1995); *see also Houston N. Hosp. Properties v. Telco Leasing, Inc.*, 688 F.2d 408, 410 (5th Cir. 1982) (summary judgment granted when nonmoving party unable prevail even if disputed fact issue resolved in its favor). No assumption, in the absence of any proof, arises that the nonmoving party can or will establish the necessary facts at trial. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

## FACTUAL BACKGROUND

Naomi and Charles Ryans, both of whom are African–American, lived in Livingston, Texas. *See* Mot. Summ. J. Defs. Livingston Independent School District, Charlene Gresham, and Sidney Green [hereinafter Mot. I] (Dep. of Naomi Ryans at 10–12 [hereinafter Ryans Dep.]); Pls.' Resp. Defs. Gresham's Green's and Livingston Independent School District's Mot. Summ. J. Ex. A [hereinafter Resp. I] (Aff. of Naomi Ryans at 1, 5 [hereinafter Ryans Aff.]). Their son, Charles Ryans, Jr. (Charles), was placed in Charlene Gresham's fifth grade class at Livingston Intermediate School. *See* Ryans Aff. at 1–2. Charles reported to his parents that he was being mistreated, that his teachers and classmates disliked him because of his race and that he feared going to school. *See* Ryans

Aff. at 2. He also was failing Gresham's class.[1] Ryans Aff. at 2.

The Ryans endeavored to meet with LISD officials to discuss Charles. First, they sought a conference with Gresham. She, however, refused to speak with them, even during the parent-teacher conference period. Ryans Aff. at 2. They then met with LISD's Superintendent. He referred them to Livingston Intermediate School's principal, Charles Jeffery, who is African–American. *See* Ryans Aff. at 2, 3. Apparently dissatisfied with this response, they asked for a hearing before LISD's Board of Trustees; but the Board rejected their request. Ryans Aff. at 2. (The Board's response presumably reflected a determination that the Ryans' complaint failed to implicate rights accorded to parents of students under Texas law.[2] *See* Tex.Educ.Code Ann. §§ 26.001–.011 (West 1996 & Supp.1998).) Following this rebuff, the Ryans filed complaints with the Texas Education Agency and the federal government. *See* Ryans Aff. at 2.

Jeffery was responsive to the Ryans. He began to monitor Charles' classes. Ryans Aff. at 3. He gave Naomi Ryans permission to observe Charles' classes during his absence on February 28 and 29 and March 1, 1996. *See* Ryans Dep. at 23–24, 92–93, 106–07; Ryans Aff. at 3 & Attach.

Naomi Ryans went to Livingston Intermediate School to observe Charles' classes on February 28, 1996. *See* Ryans Dep. at 21, 92; Ryans Aff. at 3. Upon her arrival, she went to the administrative office to receive Jeffery's written authorization. *See* Ryans Dep. at 92–93.

Gresham taught Charles' second class. *Compare* Ryans Dep. at 136 *and* Ryans Aff. at 3 *with* Ryans Aff. Attach. *Compare* Compl. ¶ 2.02 *with* Defs.' Livingston Independent School District, Charlene Gresham

and Sidney Green, Original Ans. ¶ 9 [hereinafter Ans. I]. Naomi Ryans had attended Gresham's class on prior occasions under Jeffery's auspices. *See* Ryans Dep. at 24, 94–95. She had been assigned a seat not close to Charles, a circumstance about which she had expressed displeasure. *See* Ryans Dep, at 94–95.

Naomi Ryans was told by Gresham at the start of class that she could stay for an hour. *Compare* Ryans Dep. at 26 *with* Ryans Aff. at 3. After class had begun, she asked to speak with Gresham in the hall outside of the classroom. The teacher declined because she was busy.[3] *See* Ryans Dep. at 28–29.

Gresham told Naomi Ryans to leave after an hour had passed. *See* Ryans Dep. at 29; Ryans Aff. at 3. But Naomi Ryans remained because Jeffery had authorized her to be present for the entire class period, which apparently ran from 8:50 to 10:30 a.m. *See* Ryans Dep. at 29, 101; Ryans Aff. at 3 & Attach; *see also* Ryans Dep. at 26, 28. She indicated her unwillingness to acquiesce to Gresham by shaking her head. *See* Ryans Dep. at 29. When she was again ordered to depart, she verbally refused. Ryans Dep. at 29. This recalcitrance prompted Gresham to send a student to summon Sidney Green, Livingston Intermediate School's Counselor, who was in charge during Jeffery's absence. *See* Ryans Dep. at 29, 48; Ryans Aff. at 3. *Compare* Compl. ¶ 2.03 *with* Ans. I ¶ 10.

Naomi Ryans agreed to go to Green's office to talk about the situation after he arrived. *See* Ryans Dep. at 31, 101–02. When no discussion ensued there, she apprised Green's secretary, of her intention to return to Gresham's classroom and left his office. *See* Ryans Dep. at 31–32, 102–04.

Naomi Ryans went back to Gresham's classroom. *See* Ryans: Dep. at 32, 104. Gresham stopped class and sent a student to

---

1. In her deposition, Naomi Ryans stated that Gresham was trying to force Charles out of her class. *See* Ryans Dep. at 107.

2. Even if the Board erred in finding the Ryans' concern beyond the rights of parents of students under Texas law, nothing in the summary judgment record discloses that it was required to provide them with a hearing. *See* Tex.Educ. Code Ann. § 26.011 (West 1996 & Supp.1998).

3. Accounts vary as to whether or not someone would have been in the classroom to supervise the students if Gresham had gone into the hall with Naomi Ryans. *Compare* Ryans Dep. at 28 *with* Ryans Aff. at 4. *See generally* 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2726 (2d ed. Supp.1997).

retrieve Green. Ryans Dep. at 32–33, 104, 121–22. At this point, Naomi Ryans told Charles that she was being asked to leave and that he had to stand up and be a man. *See* Ryans Dep. at 120–21. She sat next to her son to comfort him. Gresham told her to return to her assigned seat. Ryans went to her seat. Ryans Dep. at 33.

Green again appeared. Ryans Dep. at 33, 104. Gresham halted class. Green then asked Naomi Ryans to exit the classroom. She refused. Ryans Dep. at 33–34.

Livingston's Police Department was contacted by the school about Naomi Ryans.[4] *See* Ryans Aff. at 3–4. The department dispatched one of its officers, Byron Lyons, to the school. *See* Ryans Aff. at 4; *see also* Def.'s Mem.Law Supp.Mot.Summ.J. Ex. B [hereinafter Mot. II] (Lyons Aff. at 1 [hereinafter Lyons Aff.]). *Compare* Compl. ¶ 2.04 *with* Defs. The City of Livingston, Texas and Byron Lyons' Original Ans. ¶ 9.

Lyons went to the door of Gresham's classroom after he arrived at Livingston Intermediate School. *See* Ryans Dep. at 35, 104–05; Ryans Aff. at 4. *Compare* Ryans Dep. at 21 *with* Ryans Aff. Attach. Seeing him, Naomi Ryans assumed that he had been called to arrest her. Ryans Aff. at 4; *see also* Ryans Dep. at 35–36, 146. Lyons left after 5 or 10 minutes had passed. *See* Ryans Dep. at 35.

Naomi Ryans exited Gresham's classroom when class ended at 10:30 a.m. *See* Ryans Dep. at 34–35, 36, 39–40, 105; Ryans Aff. at 4 & Attach. She then met with Green and Lyons.[5] *See* Ryans Dep. at 34, 105–06; Ryans Aff. at 4. She asserted to them that she had a right to be present at the school

and tried to show them Jeffery's written authorization. Ryans Dep. at 36–37, 120. They refused to look at the principal's note.[6] *See* Ryans Dep. at 36, 120.

Green told Naomi Ryans that the Jeffery's absence made the written authorization unenforceable and ordered her to leave the premises and to return when Gresham's schedule permitted. Ryans Aff at 4; *see* Ryans Dep. at 36–37. When she remained, he said that he would ask Lyons to arrest her if she failed to heed him. Ryans Dep. at 37.[7] Because Naomi Ryans again did not depart, Lyons arrested her for trespassing under Section 30.05 of the Texas Penal Code (criminal trespass), *see* Tex. Penal Code Ann. § 30.05 (West 1994 & Supp.1998). *See* Lyons Aff. at 1; Ryans Aff. at 4; *see also* Ryans Dep. at 10–11.

Naomi Ryans assumed that Lyons had arrested her when he said, "Come on, let's go." He never explicitly told her that she was under arrest. He neither placed her in handcuffs nor used physical force. *See* Ryans Dep. at 38–39.

Lyons took Naomi Ryans to the police station. *See* Ryans Dep. at 39. Naomi Ryans secured her release by posting a $100 bond. *See* Ryans Dep. at 74. The criminal trespass charge against her was subsequently dismissed. *See* Ryans Dep. at 80–81.

The Ryans filed suit against Gresham, Green, Lyons, Livingston and LISD on May 15, 1997. *See* Pls.' Original Compl. [hereinafter Compl.] (file stamp). They alleged that the events of February 28, 1996, which culminated in Naomi Ryans' arrest, violated the First and Fourteenth Amendments to the

4. The Ryans allege that Gresham asked Green to call the police. Compl. ¶ 4.13. But no evidence in the summary judgment record substantiates this contention. *See* Ryans Dep. at 34–35; Ryans Aff. at 3–4.

5. Naomi Ryans gave differing accounts of exactly where she met with Green and Lyons. In her deposition, she identified Jeffery's office. Ryans Dep. at 34. In her subsequent affidavit, she said Green's office. Ryans Aff. at 4. *See generally* 10A Wright et al.,'*supra* § 2726. (The summary judgment record fails to disclose whether the offices of Jeffery and Green were located in the same administrative office area.)

6. The refusal of Green and Lyons to look at Jeffery's written authorization makes irrelevant that document's failure to account for the time between 10:30 and 11:00 a.m., when Charles' lunch period began. (The principal had verbally given Naomi Ryans permission to go to the teachers' lounge between 10:30 and 11:00 a.m. *See* Ryans Dep. at 40, 56, 152. Nothing in the summary judgment record indicates that Naomi Ryans specifically apprised Green and Lyons of that particular sanction.)

7. Later in her deposition, Naomi Ryans stated that she had no recollection of Green warning her that refusal to leave would result in her arrest. *See* Ryans Dep. at 58.

United States Constitution, as well as Section 1981, and constituted a false imprisonment.[8] *See* Compl. ¶¶ 1.01–.03, 5.01–6.04. They requested damages, a declaratory judgment proclaiming defendants' conduct unconstitutional and violative of Section 1981, and enjoinment of similar conduct in the future.[9] *See* Compl. ¶¶ 7.01–.03.

■ Gresham, Green, Lyons, Livingston and LISD subsequently moved for summary judgment. They argued that, as a matter of law, they were free from liability as to all claims. Gresham, Green and Lyons also asserted that, if they had infringed on the Ryans' constitutional rights or had falsely imprisoned Naomi Ryans, then they were entitled to immunity.[10] *Compare* Mot. I *and* Def.'s Mem.Law Supp.Mot.Summ.J. [hereinafter Mot. II] *with Hart v. O'Brien,* 127 F.3d 424, 450–51 (5th Cir.1997) (discussing Texas' official immunity doctrine) *and Cantu v. Rocha,* 77 F.3d 795, 808–10 (5th Cir.1996) (same) *and City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994) (same) *and Ganther v. Ingle,* 75 F.3d 207, 210–11 (5th Cir.1996) (discussing federal qualified immunity) *and White v. Taylor,* 959 F.2d 539, 545 n. 4 (5th Cir.1992) (same).

## DISCUSSION

### Section 1983 Claims

The Ryans bring their constitutional claims under 42 U.S.C. § 1983 (Section 1983). *Compare* Compl. ¶¶ 1.02, 5.05 *with Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 617–18, 99 S.Ct. 1905, 1916, 60 L.Ed.2d

508, 522–23 (1979). To prevail on each of these causes of action, they must prove (1) that they were deprived of a right or interest secured by the Constitution and (2) that the deprivation occurred under color of state law.[11] *Doe v. Rains County Indep. Sch. Dist.,* 66 F.3d 1402, 1406 (5th Cir.1995).

### Free Speech

The Ryans maintain that Gresham, Green, Lyons, Livingston and LISD violated the First Amendment because Naomi Ryans' arrest "denied [them] . . . the right to voice their complaints about the way their child was being treated." Compl. ¶ 5.02; *see* Resp. I at 7; Resp. II at 4–5.[12] They, specifically, consider the refusal of Gresham, Green and Lyons to recognize her representations that she was authorized to remain with Charles as an abridgement of her right to free speech under the First Amendment.[13] *See* Compl. ¶ 5.02–.03; Resp. II at 4–5. They presumably believe that this circumstance also imposes liability on Livingston and LISD. *See* Compl. ¶ 5.02. Gresham, Green, Lyons, Livingston and LISD counter that the events of February 28, 1996, evince no First Amendment transgression. *See* Mot. I at 11; Mot. II at 5.

■ The position of Gresham, Green, Lyons, Livingston and LISD prevails. First, the speech in which Naomi Ryans engaged falls outside of the First Amendment's purview. *See Riggs v. City of Pearland,* 177 F.R.D. 395, 407 (S.D.Tex.1997) (suspect's ef-

---

8. The Ryans now assert that Naomi Ryans was denied access to Charles' classes on February 29 and March 1, 1996. Resp. I at 7. The summary judgment record includes no evidence supporting this claim.

9. As they sought damages, the Ryans presumably sued Gresham, Green and Lyons individually. *Compare* Compl. ¶ 7.01 *with Kentucky v. Graham,* 473 U.S. 159, 165–67, 105 S.Ct. 3099, 3105–06, 87 L.Ed.2d 114, 121–23 (1985).

10. Although qualified immunity may be raised as a defense against Section 1981 claims, Gresham, Green and Lyons did not do so. *Compare* Mot. I at 13–14 *and* Mot. II 13–15 *with Wicks v. Mississippi State Employment Servs.,* 41 F.3d 991, 996 n. 21 (5th Cir.1995).

11. The Ryans apparently do not wish to rely on the doctrine of respondeat superior to establish Livingston (and presumably LISD) as liable under Section 1983. *Compare* Resp. II at 6–7 *with Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611, 635–36 (1978).

12. The Ryans presumably assert their First Amendment claim via the Fourteenth Amendment's due process clause. *See First Nat'l Bank of Boston v. Bellotti,* 435 U.S. 765, 778–80, 98 S.Ct. 1407, 1416–17, 55 L.Ed.2d 707, 720 (1978).

13. During the hearing on the motions for summary judgment, the Ryans' counsel stated that "the whole issue is whether Ms. Gresham's schedule would prevail or Mr. Jeffery's schedule would prevail."

fort to explain the situation as police officers tried to subdue him receives no First Amendment protection). Second, no suppression of Naomi Ryans' speech occurred; she related her belief that she could stay at the school. That nobody acceded to her position fails to implicate freedom of speech. *See Smith v. Arkansas State Highway Employees, Local 1315,* 441 U.S. 463, 464–65, 99 S.Ct. 1826, 1828, 60 L.Ed.2d 360, 362–63 (1979); *Doe ex rel. Nelson v. Milwaukee County,* 712 F.Supp. 1370, 1378 (E.D.Wis. 1989), *aff'd on other grounds,* 903 F.2d 499 (7th Cir.1990); *Gordon v. Heimann,* 514 F.Supp. 659, 661 (N.D.Ga.1980). The Ryans' First Amendment claim, consequently, lacks merit. *See Bradt v. Smith,* 634 F.2d 796, 799–800 (5th Cir. Unit A Jan.1981) (Section 1983 claim fails because none of the rights allegedly violated qualify as constitutional rights), *cert. denied,* 454 U.S. 830, 102 S.Ct. 125, 70 L.Ed.2d 106 (1981).

*Parental Right to Direct Child's Education*

■ The Ryans maintain that Gresham, Green and LISD breached their "constitutional right ... to have access to their child's educational environment" by instigating her arrest. Resp. I at 7; *see* Compl. ¶ 5.03. In doing so, they apparently assert that the arrest violated their right to direct Charles' education, which flows from the substantive component of the Fourteenth Amendment's due process clause (i.e., the right is one of substantive due process), *see Washington v. Glucksberg,* —— U.S. ——, ——, 117 S.Ct.

2258, 2267, 138 L.Ed.2d 772, 786–87 (1997); *Moore v. City of East Cleveland, Ohio,* 431 U.S. 494, 500–06, 97 S.Ct. 1932, 1936–39, 52 L.Ed.2d 531, 538–42 (1977); *Runyon v. McCrary,* 427 U.S. 160, 176–79 & n. 15, 96 S.Ct. 2586, 2597–99 & n. 15, 49 L.Ed.2d 415, 428–30 & n. 15 (1976).[14] *See* Fed.R.Civ.P. 8(f); *Doe v. Special Sch. Dist. of St. Louis County,* 637 F.Supp. 1138, 1145–46 & n. 3 (E.D.Mo.1986). *Compare* Compl. ¶¶ 1.02, 5.02–.05, 6.03 *and* Resp. I at 7 *and* Resp. II at 4–5 *with Roberts v. United States Jaycees,* 468 U.S. 609, 618–20, 104 S.Ct. 3244, 3250–51, 82 L.Ed.2d 462, 471–73 (1984) *and Winston v. Children and Youth Servs. of Del. County,* 748 F.Supp. 1128, 1134–35 & n. 10 (E.D.Pa. 1990) *and* John E. Nowak & Ronald D. Rotunda, *Constitutional Law* §§ 11.7, 16.41 (5th ed.1995).[15] They also assert that Lyons conspired with Gresham and Green to deprive her of that constitutional guarantee and seek to hold the police officer and Livingston liable for his doing so. *See* Resp. II at 5, 6–7. Gresham, Green, Lyons, Livingston and LISD maintain that the Ryans allege no constitutional violation. *See* Mot. I at II; Mot. II at 6–7.

■ The position of Gresham, Green, Lyons, Livingston and LISD possesses merit. An exhaustive review of the case law pertaining to the constitutional right of parents to direct the education of their children discloses no holding even remotely suggesting that this guarantee includes a right to access to the classes in which one's child participates.[16] *See, e.g., Swanson v. Guthrie*

14. The Ryans now claim that Naomi Ryans' arrest manifested a denial of equal protection of the laws in violation of the Fourteenth Amendment. *See* Resp. II at 5. However, as counsel for Gresham, Green and LISD noted during the hearing on the summary judgment motions, the summary judgment record fails to include evidence demonstrating that the Ryans were treated differently than similarly situated persons in an unprotected class. Such a void defeats any equal protection claim. *See Davis v. Georgia State Bd. of Educ.,* 408 F.2d 1014, 1015 (5th Cir.1969); *Jackson v. Katy Indep. Sch. Dist.,* 951 F.Supp. 1293, 1302 (S.D.Tex.1996).

15. The contention by the Ryans' counsel during the hearing on the motions for summary judgment that Charles Ryans possesses standing because of his status as Charles' father further

suggests that the Ryans allege a violation of their constitutional right to direct their son's education. *See Hobson v. Hansen,* 265 F.Supp. 902, 906 (D.D.C.1967) (three-judge panel); 13 Charles Alan Wright et al., *Federal Practice and Procedure* § 3531.9 (2d ed. 1984 & Supp.1997).

16. The rights afforded to parents of students under Texas law include no duty to provide parents with access to classes. *See* Tex.Educ.Code Ann. §§ 26.001–.010 (West 1996 & Supp.1998); Frank Kemerer & Jim Walsh, *The Educator's Guide to Texas School Law* 33–39 (4th ed.1996); *cf.* Tex. Educ.Code Ann. § 37.124 (West 1996 & Supp. 1998) (a person who enters a classroom without the consent of either the principal or the teacher and, through either acts of misconduct or the use of loud or profane language, disrupts class activities is guilty of a Class C misdemeanor). *See*

*Indep. Sch. Dist. No. 1–L,* 135 F.3d 694, 699–700, 702 (10th Cir.1998); *see also* Nowak & Rotuna, *supra* § 14.28; *cf. Mount Sinai Union Free Sch. Dist. v. Board of Educ. Port Jefferson Pub. Schs.,* 836 F.Supp. 95, 101 (E.D.N.Y.1993) (dismissing claims for lack of standing) (observing plaintiffs' failure to offer "relevant authority supporting their position that students or their parents have the constitutionally protected right to be taught by a teacher of their choice").

■ The Ryans' claim, indeed, really aims to establish that their constitutional right to direct their son's education imposes upon schools and school officials an obligation to permit them to attend his classes. *See, e.g.,* Resp. I at 7. The Constitution, however, fails to mandate affirmative action, which they seek, to protect substantive due process rights. *See DeShaney v. Winnebago County Dep't of Social Servs.,* 489 U.S. 189, 194–97, 109 S.Ct. 998, 1002–04, 103 L.Ed.2d 249, 257–60 (1989); *Pinder v. Johnson,* 54 F.3d 1169, 1174–76 (4th Cir.) (en banc), *cert. denied,* 516 U.S. 994, 116 S.Ct. 530, 133 L.Ed.2d 436 (1995); *Winston,* 748 F.Supp. at 1134–35 & n. 12; *see also San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 38–39, 93 S.Ct. 1278, 1299–1300, 36 L.Ed.2d 16, 46–47 (1973).

■ The interference with the Ryans' effort to monitor Charles' classes represents no violation of the constitutional right of parents to direct the education of their children. This circumstance operates to foreclose the existence of a conspiracy between Gresham, Green and Lyons to deprive the Ryans' of that right. *See Gillum v. City of Kerrville,* 3 F.3d 117, 123 (5th Cir.1993), *cert. denied,* 510 U.S. 1072, 114 S.Ct. 881, 127 L.Ed.2d 76 (1994); *Kaplan v. Clear Lake City Water*

*Auth.,* 794 F.2d 1059, 1065 (5th Cir.1986). The Ryans' Fourteenth Amendment claim, therefore, proves unsuccessful. *See Bradt,* 634 F.2d at 799–800; *Doe "A",* 637 F.Supp. at 1146.

### Wrongful Arrest

The Ryans apparently seek to hold Lyons and Livingston liable for arresting Naomi Ryans in violation of the Fourth Amendment.[17] *Compare* Resp. II at 3–4 *with Armes v. City of Philadelphia,* 706 F.Supp. 1156, 1163 (E.D.Pa.1989), *aff'd sub. nom. Armes v. Doe,* 897 F.2d 520 (3d Cir.1990) *and Dowling v. Goode,* CIV.A. No. 87–7361, 1989 WL 6380, at *2 (E.D.Pa.Jan.24, 1989), *aff'd,* 897 F.2d 521 (3d Cir.1990). Lyons argues that he committed no breach because he possessed probable cause to arrest Naomi Ryans for criminal trespass. *See* Mot. II at 4. The Ryans respond that Jeffery's authorization of Naomi Ryans to attend her son's classes establishes effective consent, which "destroy[ed] any probable cause." Resp. II at 3–4. Lyons counters that he had probable cause to believe that Ryans had no effective consent. *See* Reply at 3–4. Livingston asserts that the absence of any Fourth Amendment transgression by Lyons absolves it.[18]

■ A warrantless arrest represents no violation of a suspect's Fourth Amendment rights if the arresting officer possesses probable cause.[19] *See Bodzin,* 768 F.2d at 724. Whether the officer possesses probable cause depends on whether, at the time of the arrest, the facts and circumstances within his knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent person believing that the arrested person had committed or was com-

---

*generally Nevares v. San Marcos Consol. Indep. Sch. Dist.,* 111 F.3d 25 (5th Cir.1997) (procedural due process case).

17. The Ryans presumably assert their Fourth Amendment claim via the Fourteenth Amendment's due process clause. *See Wheeler v. Cosden Oil and Chem. Co.,* 734 F.2d 254, 258 n. 11 (5th Cir.1984).

18. At the hearing on the motions for summary judgment, Livingston claimed that Lyons' permissible behavior cleared it of any Fourth Amendment breach.

19. Under Texas law, for a warrantless misdemeanor arrest to be valid, the officer must have probable cause to believe that the suspect has committed a crime in his presence. *Bodzin v. City of Dallas,* 768 F.2d 722, 724 (5th Cir.1985); *see also Salazar v. State,* 788 S.W.2d 681, 682 (Tex.App.—Texarkana 1990, no writ). This rule, however, fails to control when a plaintiff alleges an arrest repugnant to federal constitutional guarantees. *See Hart,* 127 F.3d at 439.

mitting an offense. *See Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142, 145 (1963); *Duckett v. City of Cedar Park, Tex.,* 950 F.2d 272, 278 (5th Cir.1992).

■ Criminal trespass, the offense under Texas law for which Lyons arrested Naomi Ryans, occurs when a person "enters or remains on property or in a building of another without effective consent and [she] .... had notice that the entry was forbidden or received notice to depart but failed to do so." *State v. Garcia,* 859 S.W.2d 125, 126–27 (Tex. App.—Fort Worth 1993, no writ). " '[N]otice' means either written or oral communication by someone with apparent authority to act for the owner...." *Id.* at 126. An arrest for criminal trespass based on probable .cause is lawful even if the suspect was exercising her First Amendment rights at the time. *See Armes,* 706 F.Supp. at 1163; *Dowling,* 1989 WL 6380, at *2.

■ Lyons' position proves availing because the circumstances he confronted on February 28, 1996, provided him with probable cause to arrest Naomi Ryans for criminal trespass. In his presence, Green, the school official with whom he had met after his arrival, demanded that Naomi Ryans leave and deemed Jeffery's written authorization invalid. Despite being ordered off the premises, Naomi Ryans remained. A reasonably prudent person in this situation would have concluded that the elements of criminal trespass were present; in other words, probable cause existed to arrest Naomi Ryans for that offense. *See Albright v. Longview Police Dep't,* 884 F.2d 835, 837, 842 (5th Cir.1989); *Bodzin,* 768 F.2d at 724–26. This situation not only exonerates Lyons, but also frees Livingston from liability based on his conduct. *See City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806, 810-11 (1986). The Ryans'

Fourth Amendment claim, therefore, proves unavailing.[20]

### *Section 1981 Claim*

■ The Ryans allege that Gresham and Green sought Naomi Ryans' arrest because of her race in violation of Section 1981.[21] *See* Resp. II at 6. They apparently consider LISD liable for any breach of Section 1981 perpetrated by Gresham and Green.[22] *See* Compl. ¶ 5.04. To prevail on this claim, they must show that (1) they are members of a racial minority, (2) Gresham and Green had an intent to discriminate on the basis of race and (3) the discrimination concerned one or more activities enumerated in the statute. *See Bellows v. Amoco Oil Co.,* 118 F.3d 268, 274 (5th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 739, 139 L.Ed.2d 675 (1998).

■ Gresham and Green claim that the Ryans offer no evidence of racial animus. *See* Mot. I at 11 ("The Court should grant summary judgment because there is no evidence to support each element of the Ryans' federal claims."); *cf.* Reply at 5. The Ryans offer only to their subjective belief that their race motivated Gresham and Green, which they apparently express nowhere other than in their pleading, *see* Compl. ¶¶ 1.02, 5.04.[23]

The position of Gresham and Green possesses merit. The Ryans' subjective belief that their race induced Gresham and Green to seek Naomi Ryans' arrest, which they convey only in their complaint, creates no jury issue on motivation. *See Legendre v. Chase Manhattan Bank,* No. 94 CIV. 2911(JES), 1996 WL 514874, at *7 (S.D.N.Y. Sept.10, 1996); *Mosley v. Houston Community College Sys.,* 951 F.Supp. at 1279, 1288–89 (S.D.Tex.1996); *Jean v. Walgreen Co.,* 887 F.Supp. 1007, 1012 (N.D.Ill.1994); *see also Krim v. BancTexas Group, Inc.,* 989 F.2d 1435, 1449–50 (5th Cir.1993). Besides fore-

---

**20.** As this case evinces no constitutional violations under current law, arguments by Gresham, Green and Lyons relating to qualified immunity go unaddressed. *See White,* 959 F.2d at 545 n. 4.

**21.** The Ryans disclaim any intention to sue Lyons or Livingston under Section 1981. *See* Resp. II at 6.

**22.** The Ryans presumably do not wish to rely on the doctrine of respondeat superior to establish

LISD's liability under Section 1981. *Compare* Resp. II at 6–7 *with Jackson v. City. of Chicago,* No. 96 C 3636, 1996 WL 734701, at *8 (N.D.Ill. Dec.18, 1996).

**23.** During the hearing on the summary judgment motions, the Ryans' counsel identified the evidence supporting the Section 1981 claim.

closing the Section 1981 claim against Green and Gresham, this shortcoming defeats the Section 1981 claim as to LISD.[24] *See Heller*, 475 U.S. at 799, 106 S.Ct. at 1573, 89 L.Ed.2d at 810–11. It also precludes consideration of whether or not the Civil Rights Act of 1991 permits LISD to be sued under Section 1981. *See Mosley*, 951 F.Supp. at 1289. *Compare, e.g., Federation of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1209–14 (9th Cir.1996) *with Johnson v. City of Fort Lauderdale*, 903 F.Supp. 1520, 1522–23 (S.D.Fla.1995), *aff'd on other grounds*, 114 F.3d 1089 (11th Cir.1997).

### False Imprisonment Claim

The Ryans allege that, based on the conduct of Gresham, Green and Lyons on February 28, 1996, Livingston and LISD are liable for falsely imprisoning Naomi Ryans. *Compare* Compl. ¶¶ 6.01–.03 *with Williams v. United States*, 71 F.3d 502, 506 (5th Cir. 1995) ("An employee's intentional tort is imputed to the employer under the doctrine of *respondeat superior* when committed in the scope of employment.").[25] To prevail on this claim, they must demonstrate (1) willful detention, (2) without consent and (3) without authority of law. *See Sears, Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 375–76 (Tex. 1985).

Livingston and LISD assert that the false imprisonment claim lacks merit because sovereign immunity protects them against it, a point the Ryans concede. *Compare* Mot. I at 15 *and* Mot. II at 12 *with* Resp. I at 11 *and* Resp. II at 7. This argument succeeds. *See* Tex.Civ.Prac. & Rem.Code Ann. §§ 101.051, 101.057 (West 1997 & Supp.1998); *Jones v. Houston Indep. Sch. Dist.*, 979 F.2d 1004, 1007 (5th Cir.1992).

### LEAVE TO AMEND COMPLAINT

The Ryans seek leave to file an amended complaint alleging that "the ... Livingston Police Department[ ] [follows an] unwritten policy or custom [of] ... enforc[ing] the wishes of white school administrators."[26] Resp. II at 6–7, 8. As Lyons committed no constitutional violation in arresting Naomi Ryans, adding this charge is an exercise in futility. *See Heller*, 475 U.S. at 799, 106 S.Ct. at 1573, 89 L.Ed.2d at 810–11. This situation merits denial of the Ryans'

---

**24.** In a case such as this one, which apparently involves rights under Section 1981 other than those relating to the making and enforcement of contracts, the applicability of the burden-shifting framework announced in *McDonnell Douglas v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668, 677–79 (1973), which concerns employment discrimination, becomes questionable. *See Jackson*, 951 F.Supp. at 1300–01 (conducting no *McDonnell Douglas* analysis and simply finding an absence of evidence of discriminatory intent); 2 Joseph G. Cook & John L. Sobieski, Jr., *Civil Rights Actions* ¶ 5.10 (1997) (reporting resort to the *McDonnell Douglas* framework in Section 1981 cases "alleging disparate treatment in hiring, promotion, and termination practices, employment related disciplinary actions, and job assignment and referral and the granting of dealerships"). However, even under the *McDonnell Douglas* approach, the Ryans' Section 1981 claim perishes because they do not adduce evidence sufficient to rebut the legitimate, non-discriminatory reason offered for the decision to eject Naomi Ryans from Livingston Intermediate School, trespassing. *Cf. Jean*, 887 F.Supp. at 1011. *See generally St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407, 415–16 (1993) (reciting the second stage of the *McDonnell Douglas* burden-shifting framework: "[T]he defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, *if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action.").

**25.** The Ryans' failure to offer a response to the official immunity arguments of Gresham, Green and Lyons indicates that their false imprisonment claim concerns only Livingston and LISD. *See* Resp. I at 11; Resp. II at 7. This circumstance makes unnecessary consideration of claims for official immunity raised by the three individual defendants, *see* Mot. I at 15; Mot. II at 13.

**26.** At the hearing on the summary judgment motions, the Ryans' counsel stated that the amended complaint would allege a custom of unconstitutional arrests. He conceded the absence of evidence supporting this theory other than the arrest of Naomi Ryans on February 28, 1996. *See also* Resp. II at 6 (citing Naomi Ryans' arrest as the basis for the allegation of an unconstitutional policy or custom). *See generally* 1 Joseph G. Cook & John L. Sobieski, Jr., *Civil Rights Actions* ¶ 2.05[B][6] (1997) ("In short, a claim based on a municipal custom generally requires proof of a pattern or series of incidents of unconstitutional conduct.").

motion for leave to file an amended complaint. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222, 225–26 (1962); *Avatar Exploration, Inc. v. Chevron, U.S.A., Inc.,* 933 F.2d 314, 321 (5th Cir.1991); *cf. Emory v. Texas State Bd. of Medical Examiners,* 748 F.2d 1023, 1027 (5th Cir .1984).

## CONCLUSION

The court grants defendants' motions for summary judgment [17, 21]. It denies the Ryans' motion for leave to file an amended complaint. It will enter orders consistent with this memorandum opinion.